Samuel Grenninger, Plff. in Err., *v.* J. P. Gephart et al.

G delivered to M certain goods as of a certain quality, which goods M thereafter sold to a third party, who rejected them as not coming up to the quality represented. M thereupon sued such third party for the price of the goods, but was defeated in the suit and compelled to pay costs. M then charged up the amount of such costs against G in his account with him; and claimed that he, M, had sold the goods as G's agent simply, and had brought the suit in which such costs accrued, for G and at his request; and on G's refusal to refund the amount of such costs M brought assumpsit against him therefor. G claimed that he had sold the goods to M and that M dealt with the goods as his own, and not as G's agent, and that G did not request the bringing of the suit in which the costs accrued. *Held,* that the question of G's liability to M for the amount of said costs was properly submitted to the jury.

(Argued April 17, 1888. Decided May 14, 1888.)

January Term, 1887, No. 430, E. D., before GORDON, Ch. J.,

NOTE.—Where the evidence is conflicting as to the existence of the relationship of principal and agent, the question is for the jury. Sergeant v. Martin, 133 Pa. 122, 19 Atl. 568; Arthurholt v. Susquehanna Mut. F. Ins. Co. 159 Pa. 1, 39 Am. St. Rep. 659, 28 Atl. 197; Fisher v. O'Donnell, 153 Pa. 619, 26 Atl. 293; Robert J. & R. Ritchie Co. v. Albion Mfg. Co. 173 Pa. 447, 34 Atl. 450.

PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to the Court of Common Pleas of Centre County to review a judgment in favor of plaintiffs in an action of assumpsit, April Term, 1886, No. 13. Affirmed.

The action was brought by J. P. Gephart and D. A. Musser, lately trading as Gephart & Musser, now to the use of D. A. Musser, against Samuel Grenninger, to recover an alleged balance upon an account.

The principal item in controversy was a charge made by the plaintiffs against the defendant, for costs paid by them in a suit brought by them against Gossler & Company in the court of common pleas of Clinton county, for the price of certain shingles.

At the trial the plaintiff made the following offer of evidence:

Plaintiffs propose to prove by D. A. Musser, the witness on the stand, and others, that after the trial in case of Gephart & Musser v. Gossler & Company, in Clinton county, brought to recover the car load of shingles in controversy in this case, plaintiffs were compelled to pay and did pay the docket costs in said suit, and witnesses' cost amounting to the sum of $120.44, and also $15 of witness fees to F. P. Musser in same case; that plaintiffs incurred these costs through the misrepresentations of defendant in marking the shingles sold as No. 2's when they were not such; and that plaintiffs were compelled to incur this expense through the error, mistake, or fraud of the defendant in labeling and marking the shingles. This for the purpose of claiming the amount of the costs as part of plaintiffs' claim in the action.

Defendant objected to this offer for the following reasons: (1) If plaintiffs sold these shingles, as claimed, for defendant Samuel Grenninger, they had no right to bring any suit in their own name against Gossler & Company to recover the price of the shingles; and any costs or expenses incurred thereby cannot constitute a proper charge against defendant; (2) it is not proposed to show that said suit was brought, or the costs and expenses incurred, by direction or at the instance of defendant; (3) the evidence is incompetent to affect the defendant; and (4) the evidence offered is irrelevant.

Thereupon plaintiffs further proposed "to prove by the witness on the stand, and other witnesses, that defendant told plain-

tiffs that they, the plaintiffs, must sue Gossler & Company, and collect the money for this car load of shingles from them, and urged plaintiffs to bring suit at once; and that if this was not done defendant would hold plaintiffs responsible for the shingles; and further positively asserted that the shingles shipped were No. 2's and Gossler must pay for them."

By the Court: "Evidence admitted and bill sealed for defendant." [1]

The court, FURST, P. J., charged the jury as follows:

This is an action brought by the firm of Gephart & Musser for the use of D. A. Musser, this plaintiff, against Samuel Grenninger, to recover an alleged balance due the plaintiff upon an account existing between them. The whole amount of the plaintiff's account is $630.91, upon which account the plaintiff has entered credits to the amount of $358.99, which leaves, according to the plaintiff's allegation, a balance in his favor of $271.92.

In this account there are several items that are disputed by the defendant, the first of which is on the debtor side; and then there are two or three disputed items on the credit side. On the debtor side of the plaintiff's account the defendant disputes a charge of $23.65, which is termed the Carstetter assumpsit. Another is the item of cash paid to Ammon Grenninger, $10; and another, which is termed the bill of costs incurred in the suit at Lock Haven, of $120.44, and a further sum of costs to be paid to F. P. Musser, in that suit, of $15, making the total items disputed in the plaintiff's account $169.09. The defendant also disputes the credits which the plaintiff allowed him upon two lots of shingles—one lot of 10,000 No. 2's and one lot of 28,400 No. 2's. For these two lots of shingles the plaintiff credits the defendant, according to the plaintiff's theory, with what Gephart & Musser received for them.

The defendant contends that the shingles were sold to the plaintiff at a fixed price, and he demands, in this case, a credit for the fixed price at which he contends that the shingles were sold.

Then, first, as to the assumption of $23.65, being the Carstetter account: This assumption is not in writing, and if it were, therefore, simply an undertaking to pay the debt of a third party, it could not be recovered in this case, because it is not

in writing. If, however, you believe the testimony on the part of the plaintiff, and especially the testimony of Mr. Carstetter, that this $23.65 was paid by Carstetter to Grenninger, and that Grenninger directed the charge to be made by Gephart & Musser against him, then it does not fall within the act of assembly which requires the assumption to be in writing. The plaintiff contends that this $23.65 had been actually paid by Carstetter to Grenninger, for whom he worked, and that by an agreement between Carstetter and Grenninger, Grenninger charged it up to Carstetter and then directed Gephart & Musser to charge him with it. If you find these to be the facts of the case, it would constitute a proper charge against the defendant in this case. If such be not the facts in this case, then you must eliminate that item from the plaintiff's account.

As to the credits for the two lots of shingles in dispute, namely, 10,000 shingles, No. 2's, at $6.50 per thousand, and 28,000 shingles, No. 2's, at $6.50 per thousand, the plaintiff, as we have already stated, credits, according to his testimony, the actual amount received from the sale of these shingles.

The cost of the suit in Lock Haven, amounting to $145.44, is connected with another branch of this case; and we will call your attention to it when we come to speak of the sale of the 28,000 shingles.

[According to the evidence on the part of the plaintiff Gephart & Musser loaned to Mr. Grenninger, on March 27, 1882, the sum of $300 in money; and, as evidence of that, a receipt is produced which is signed by Mr. Grenninger in the day book of the plaintiff, in which he acknowledges that he did that day receive $300, borrowed money. That receipt is prima facie evidence of the facts stated in it. It is subject, however, to be corrected or modified by the testimony of the witnesses. That is, if there is a mistake in that receipt, it may be corrected by parol testimony. Mr. Grenninger contends that he did not borrow the money, but that the money was paid to him on account of shingles to be delivered by him to Gephart & Musser. You have, therefore, his explanation, you have the testimony of Mr. Musser, and you have the receipt itself; and you must determine from these whether or not the money was borrowed by Grenninger, or whether it was paid on account of shingles purchased by Gephart & Musser from Grenninger.] 2

The defendant contends that this money was given to him as part of the contract price of his shingles then delivered and to be

thereafter delivered, and that he delivered on March 21, 1882, 10,400 shingles, on April 11, 21,000, on April 14, 28,000, and on May 12, 11,600 shingles. The plaintiff claims that this money was borrowed, and that after Mr. Grenninger had borrowed the money from Mr. Musser, or from Gephart & Musser, Mr. Grenninger agreed to deliver to them shingles; and that they were to sell shingles on behalf of Mr. Grenninger, and were to credit to Grenninger's account the net proceeds of the shingles as they would receive the money from the purchaser of them; and that by reason of that agreement, Gephart & Musser did sell some three lots of shingles and credited Mr. Grenninger with the net amount received for them. There is no dispute in this case as to the fact that they did sell 10,000 No. 2 shingles on March 21, which they credited at the amount received for them, and that on or about April 14, they shipped to Gossler & Company, or to George Sprecher at Chambersburg, 28,000 No. 2 shingles belonging to Samuel Grenninger; that they had made a contract with Gossler & Company, by which they agreed to ship him or his vendee, George Sprecher, at Chambersburg, 28,000 or perhaps 30,000 shingles, and that in that lot there were 28,400 shingles belonging to Samuel Grenninger.

Now, you will notice, by a reference to the charge of Mr. Grenninger against Mr. Musser, that about the same time that these shingles were shipped to Chambersburg, Mr. Grenninger charges Mr. Musser with the contract price as he alleges, $6.50 per thousand.

You will notice further that in several of the other items Grenninger only makes a charge against Musser on the day Musser ships the shingles at the yard, or effects a sale of them to some other person, and not on the day the shingles are delivered to him. These shingles were shipped, and when they arrived at Chambersburg they were rejected; and notice, in due time, came to Gephart & Musser that the shingles were not such shingles as they had sold; and, therefore, Mr. Sprecher declined to receive them.

The plaintiff further alleges that Gephart & Musser notified Grenninger of the rejection of these shingles and wanted him to take charge of them at Chambersburg, and that he declined to have anything to do with them.

And the plaintiff further alleges that after this Gephart & Musser or their representatives called on Mr. Grenninger and asked him what was to be done with the account of Gossler &

Company, stating that they refused to pay for the shingles. The plaintiff and his son testify that Mr. Grenninger directed them to collect the money from Gossler & Company,—saying that if they refused to pay it, they should bring suit at once against them, and that he would hold them responsible for the price of the shingles.

They also testify that in pursuance of that notice they brought suit against Gossler & Company at Lock Haven, in the county of Clinton; that it was shown on the trial of that case that the shingles were not of the character they were sold for, that instead of being No. 2 shingles they were No. 3 shingles, and the plaintiff failed to recover in that case, and the verdict was rendered in favor of the defendant; that the plaintiff was then compelled to pay the defendant's costs, the record costs, and the costs of his own witnesses, amounting to $145.44. That item the plaintiff charges against the defendant in this case, and the defendant disputes it.

The defendant contends, in this action, that Gephart & Musser bought those shingles at the price of $6.50 a thousand; and he asks that a credit be allowed of that amount against the plaintiff's account; and he also asks that a credit be given him in this account for 10,000 at $6.50 per thousand. The defendant further denies that he had any interest in the sale to Gossler & Company. He alleges that this was a sale made by Gephart & Musser as the owners of the shingles, and not as his agent or agents.

He denies that he ever ordered suit to be brought against Gossler & Company; and he therefore alleges that he is not liable to be charged with the costs of that unsuccessful litigation. He also denies, as we have already stated to you, the Carstetter assumption. We have instructed you fully as to the law with regard to that; and we submit that question of fact to you for your determination under the law.

Now, from this state of facts, you must determine what the contract between the parties was. If the contract was as contended for by the plaintiff in this case, that is, that Gephart & Musser sold the 10,000 shingles on March 21, 1882, and the 28,000 shingles on April 14, 1882, as the agents of Grenninger, and that they were to credit Grenninger with the net proceeds of these sales only, then Grenninger would simply be entitled to the proceeds of those shingles according to the prices at which

they were sold, or the sum received for them by Gephart & Musser.

The plaintiff alleges that after the trial of the suit in Lock Haven, Mr. Grenninger refusing to take charge of the shingles then deposited on the siding of the railroad company at Chambersburg, Gephart & Musser directed them to be sold to the best advantage and credited Grenninger with the net proceeds of that sale, amounting, after deducting freight and other charges, to $43.79; and here arises the serious question in the dispute between these parties with regard to that transaction,—whether Gephart & Musser acted as the agents of Grenninger in the sale of these two lots of shingles, or whether they sold the shingles themselves as the owners thereof. If, therefore, you find that Gephart & Musser sold these two lots of shingles as the agents of Mr. Grenninger and upon the terms testified to by the plaintiff and his son, then Mr. Grenninger would be entitled only to a credit equal to the amount that was received by Gephart & Musser. If, on the other hand, you find that Gephart & Musser purchased these shingles at fixed prices from Grenninger, then Grenninger would be entitled to a credit on this account at the contract prices; and you would then ascertain how the balance of the account stands between these parties.

[If you find that the bargain was that Grenninger was to receive as a credit the net proceeds of the sale, that Gephart & Musser were acting as his agents in the sale, then, under the evidence of the plaintiff and his witnesses, if you believe them, the plaintiff would be entitled to charge Grenninger with the costs of the unsuccessful litigation at Lock Haven; because, according to that testimony, Gephart & Musser, or their representatives, called on Mr. Grenninger and he directed them to bring suit against Gossler & Company, and they, having brought the suit, were in duty bound to prosecute it, using every reasonable effort to effect a recovery; and, if they failed, the costs would be in the nature of expenses incurred by an agent for his principal at the request of the principal.] 3

If, however, you find that they were the owners of these shingles and that Grenninger had nothing to do with them, then, of course, Grenninger would not be entitled to be charged with the costs of that litigation; but he would be entitled to credit at the contract price at which he alleges he sold the shingles. You must, therefore, take the facts and circumstances in this case,

and from them determine what the contract was between these parties.

It is your first duty to endeavor to reconcile the testimony of the witnesses; it is not proper in the first instance to impute perjury to any witness; but the endeavor of the jury should be to reconcile the testimony if they can. If the testimony is irreconcilable, then the jury must determine, from all the evidence, the true state of the case; and they must act accordingly. If you find, therefore, upon an examination of the facts that there is a balance due to the plaintiff, he will be entitled to that amount with interest on it from the time that it was due, or say six months thereafter. If, upon the contrary, you find that there is nothing due the plaintiff, but that there is a balance due the defendant, you will find for the defendant; and in your verdict you will certify how much of a balance you find in his favor; and just as you determine these questions your verdict will be, either for the plaintiff for so much, or for the defendant; and if there is a balance due him, you will certify it to the court.

The jury returned a verdict for the plaintiffs, for $328.18, and a motion for a new trial having been made and denied, judgment was entered on the verdict, and defendant took this writ, assigning as error: (1) The admission of the evidence under plaintiffs' offer; and (2, 3), the portions of the charge in brackets.

*Orvis, Bower, & Orvis* for plaintiff in error.

*Beaver & Gephart* for defendants in error.

PER CURIAM:

A careful examination of this case reveals to us nothing by which the assignments of error can be sustained. The case was one for the jury, and the facts upon which the controversy hinged were carefully submitted.

The judgment is affirmed.